Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| AUTOPISTAS METROPOLITANAS DE PUERTO RICO, LLC<br><br>Recurrida<br><br>v.<br><br>**B BILLBOARD NC, LLC; B-BILLBOARD CORP.; B-BILLBOARD AGGREGATOR, LLC h/n/c B MEDIA GROUP**; OFICINA DE GERENCIA DE PERMISOS; Y OTROS<br><br>Peticionaria | TA2025CE00966 | *Certiorari*<br>Procedente del Tribunal de Primera Instancia, Sala de BAYAMÓN<br><br>Caso Núm.:<br>BY2025CV05633<br><br>Sobre:<br>Injunction (Entredicho Provisional, Injunction preliminar y permanente)<br>Sentencia Declaratoria |

Panel integrado por su presidenta la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Mateu Meléndez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 12 de febrero de 2026.

El 29 de diciembre de 2025, B Bill BoardNC, LLC y B-Billboard Aggregator, LLC h/n/c B Media Group (B Media o la peticionaria) acudió ante nos mediante *certiorari* a solicitarnos la revocación de la *Resolución Interlocutoria* dictada por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI o foro primario) con fecha del 12 de diciembre de 2025, notificada el día 15. Por virtud del aludido dictamen, el foro primario resolvió que las disposiciones de la Regla 57 de Procedimiento Civil, 32 LPRA Ap. V R. 57, no eran incompatible con aquellas dispuestas en el Artículo 14.1 de la Ley de Reforma de Permisos, sino que se complementan. Por ello, dictaminó que la acumulación de ambas herramientas dentro del procedimiento de epígrafe no está impedida en nuestro ordenamiento jurídico.

Ese mismo día, la peticionaria, también presentó una *Moción Urgente en Auxilio de Jurisdicción y Solicitud de Orden de Suspensión Provisional.* Allí, nos pidió que dejáramos sin efecto la orden de paralización provisional emitida por el TPI mediante la cual se ordenó la paralización de la construcción de las obras cuya ilegalidad Autopistas Metropolitanas de Puerto Rico, LLC (Metropistas) aduce en la demanda de autos.

Estudiado el expediente, y en virtud del derecho aplicable que más adelante consignaremos, resolvemos **expedir** el auto de *certiorari* solicitado y **confirmar** la determinación recurrida.

**I**.

El 27 de octubre de 2025, Metropistas presentó ante el TPI una *Demanda Jurada* sobre injunction preliminar al amparo de la Regla 57 de Procedimiento Civil—y un injunction estatutario—al amparo del Artículo 14.1 de la Ley de Reforma de Permisos—en contra de la peticionaria. Allí, alegó que B Media estaba instalando dos (2) vallas publicitarias de gran escala dentro de áreas sujetas a restricciones legales y reglamentarias que, además, están bajo su administración y operación.[1] Según se alegó, la construcción está basada en permisos obtenidos mediante información falsa e incorrecta que llevaron a la Oficina de Gerencia de Permisos ("OGPe") a creer que la obra cumplía con los requisitos legales y reglamentarios aplicables. Ese día, Metropistas también sometió *Solicitud Urgente de Injunction Estatutario, Entredicho provisional e injunction preliminar*. [2]

Evaluados ambos escritos, el 28 de octubre de 2025, el TPI dictó *Orden y Citación* mediante la cual, al considerar la naturaleza extraordinaria de la situación allí descrita, declaró Con Lugar la solicitud de *injunction* preliminar presentada y emitió un entredicho provisional mediante el que ordenó la paralización total e inmediata de la construcción e instalación de

---

[1] SUMAC TPI, Entrada Núm. 1.
[2] *Id.*, Entrada Núm. 2.

vallas publicitarias identificadas en la demanda. Asimismo, y conforme la Regla 57 de Procedimiento Civil, *supra,* señaló la vista de *injunction* preliminar para el 3 de noviembre de 2025.[3]

El 31 de octubre de 2025, B Media acudió al TPI mediante *Urgente Solicitud de Desestimación, Suspensión de Vista y Para Que Se Deje Sin Efecto el Interdicto a Tenor con la Regla 57 de Procedimiento Civil*. En esta, reclamó que el pleito adolecía de parte indispensable; que el mismo acumulaba remedios y pretensiones legalmente incompatibles y, también, fue tramitado indebidamente mediante un entredicho ex parte bajo la Regla 57, pese a que el ordenamiento provee un remedio específico y exclusivo para atender la controversia, o sea, el injunction estatutario del Art. 14.1 de la Ley 161-2009.[4] Ese mismo día, el foro primario declaró No Ha Lugar este escrito y dictó que los asuntos se atenderían en la audiencia señalada. Esta decisión no fue objeto de revisión judicial.

Llegado el día de la vista, y tras escuchar los argumentos de las partes, por entender que faltaban partes indispensables, el foro primario no celebró la vista de *injunction* preliminar. También, y a solicitud de la representación legal de Metropistas, le concedió tres (3) días para oponerse por escrito a la desestimación sometida, más señaló la vista de interdicto preliminar y permanente para los días 13 y 14 de noviembre de 2025.

El 6 de noviembre de 2025, Metropista sometió *Oposición A "Urgente Solicitud De Desestimación, Suspensión De Vista Y Para Que Se Deje Sin Efecto El Interdicto A Tenor Regla 57 De Procedimiento Civil" (Sumac Núm. 20).* Allí argumentó las razones por las cuales ni el Municipio de Bayamón, ni la Autoridad de Carreteras y Transportación eran partes indispensables en la causa de epígrafe. En cuanto a esto, adujo que conforme el Artículo 14.1 de la Ley 161-2009 son partes: (i) la entidad que emitió el permiso; (ii) el dueño

---

[3] *Id.,* Entrada Núm. 18.
[4] *Íd.,* Entrada Núm. 20.

el proyecto, y (iii) el ingeniero que certificó los planos y el proyecto al amparo de la Ley Núm. 135 de 15 de junio de 1967, según enmendada, conocida como la Ley de Certificación de Planos o Proyectos, 23 LPRA secs. 42a-42i.

Además, ripostó los argumentos levantados por B Media contra el interdicto preliminar bajo la Regla 57 de Procedimiento Civil, *supra.* Específicamente, enunció que el Artículo 14.1 de la Ley 161-2009, faculta a la parte afectada a presentar una acción de *injunction, mandamus*, sentencia declaratoria o cualquier otra acción adecuada para:

(1) solicitar la revocación de una determinación final otorgada, cuya solicitud de hizo con información incorrecta o falta;

(2) la paralización de una obra iniciada sin contar con las autorizaciones y permisos correspondientes, o incumpliendo con las disposiciones y condiciones del permiso otorgado;

(3) la paralización de un uso no autorizado O de una construcción autorizada mediante permiso, para la cual no se hayan realizado los pagos correspondientes a aranceles, pólizas, arbitrios y sellos;

(4) la demolición de obras construidas, que al momento de la presentación del recurso y al momento de adjudicar el mismo no cuenten con permiso de construcción, ya sea porque nunca se obtuvo o porque el mismo ha sido revocado.

Tras así señalar, Metropistas procedió a argumentar las faltas padecidas por los permisos de construcción que autorizó la obra paralizada. Así, por ejemplo, adujo que las obras paralizadas incumplían la separación mínima requerida de seis (6) metros—equivalentes a más de diecinueve (19.685) pies—al ubicarse a apenas dieciséis (16) y diecisiete (17) pies del margen de la carretera. De ahí que los permisos de construcción consignan una separación frontal de tan solo 4.47 metros—aproximadamente 14.7 pies—lo cual confirma el incumplimiento reglamentario, y, por consiguiente, la información errónea certificada por el Ing. Álvaro Polanco Quiñones, co-demandado.

De la misma manera, expuso que el expediente administrativo no contiene una solicitud de autorización de B Media, ni autorización alguna por parte del Departamento de Transportación y Obras Públicas (DTOP) para edificar la obra como exige la Ley Núm. 54 de 30 de mayo de 1973,

según enmendada, conocida como la *Ley de Administración, Conservación y Policía de las Carreteras Estatales de Puerto Rico*, 9 LPRA sec. 2501. Por estos y demás argumentos, Metropistas afirmó que la Ley 161-2009 facultaba la intervención de los tribunales a través del remedio estatutario del *injunctions* para que, en circunstancias como las presentes en el caso, se obtenga la paralización de las obras impugnadas.[5] El 7 de noviembre de 2025, el TPI dictó Orden en la que declaró No Ha Lugar la solicitud de desestimación de B Media. Tras varios trámites procesales que no es necesario detallar, el 25 de noviembre de 2025, la OGPe compareció y presentó una *Solicitud de Desestimación.*[6]

Mientras tanto, en esa misma fecha, B Media presentó *Moción Solicitando Determinación del Marco Procesal Aplicable al Injunction Emitido y Otros Asuntos.* Allí, aseveró que el *injunction* preliminar expedido por el tribunal no especifica si el remedio responde a la Regla 57 de Procedimiento Civil, *supra,* o al Art. 14.1 de la Ley 161-2009. Según B Media, dicha omisión creó un estado de incertidumbre procesal incompatible con el derecho de toda parte de conocer el marco normativo del cual debe defenderse, por lo que era indispensable que el tribunal estableciera de forma clara bajo qué disposición fue expedido.

Como parte de su argumentación, B Media planteó que previo a ordenar la paralización de la obra, debió celebrarse en el caso una audiencia, permitirse descubrimiento de prueba y admitirse el testimonio de peritos o al menos, señalar una vista argumentativa sobre la imposición de una Fianza. Así pues, tras discutir las particularidades y consecuencias del *injunction* bajo la Regla 57 de Procedimiento Civil, *supra,* así como del Art. 14.1 de la Ley 161-2009, entre otros remedios, la peticionaria le pidió al

---

[5] *Id.* Entrada Núm. 29.
[6] *Id.,* Entrada Núm. 75.

foro primario aclarar la vía legal bajo la cual emitió el remedio de *injunction* preliminar, así como la imposición de una fianza.

El 5 de diciembre de 2025, Metropistas se opuso a la moción de B Media. Evaluados ambos escritos, el 12 de diciembre de 2025, notificada el día 15, el TPI emitió la *Resolución Interlocutoria* recurrida. Allí, expuso que el Art. 14.1 de la Ley 161-2009, bajo el cual se sometió el pleito de epígrafe, contempla la revocación de permisos y la paralización y demolición de obras mediante los mecanismos de sentencia declaratoria, *injunction, mandamus* y cualquier otro aplicable. Asimismo, enunció que es dentro de su contexto que, al amparo de la Regla 57 de Procedimiento Civil, se concedió un entredicho provisional en favor de Metropistas, señalándose audiencia para el 3 de noviembre de 2025. Acto seguido, concluyó que las disposiciones legales discutidas no eran incompatibles, sino que se complementan. Específicamente, expresó que "[…] nada en nuestro ordenamiento—ni en la Ley de Reforma de Permisos, ni en las Reglas de Procedimiento Civil, ni en la jurisprudencia—impide la acumulación del *injunction* preliminar bajo la Regla 57 y los remedios estatutarios bajo el Artículo 14.1. Por el contrario, la normativa vigente no solo la permite, sino que la hace necesaria para proteger eficazmente el orden jurídico en casos como el de autos". Resolvió pues, que procedía ventilar la vista de injunction preliminar como medida provisional y entonces, permitir que el pleito continuara bajo el Art. 14.1 de la Ley 161-2009.[7]

En desacuerdo con lo resuelto, B Media acudió ante nos mediante el recurso de epígrafe y señaló la comisión de los siguientes errores:

> PRIMER ERROR: El Tribunal de Primera Instancia erró al interpretar y aplicar la Regla 53 de Procedimiento Civil como si fuera una autorización afirmativa para "suplir", ampliar o neutralizar el procedimiento especial completo provisto en el Artículo 14.1 de la Ley 161-2009, cuando el texto de la propia Regla 53 impone exactamente lo contrario: que los procedimientos especiales "se tramitarán en la forma prescrita en el estatuto correspondiente" y que las Reglas de Procedimiento Civil solo

---

[7] Es menester señalar que el 22 de diciembre de 2025, el TPI dictó Orden mediante la que impuso una fianza de $10,000.00 a Metropistas. SUMAC TPI, Entrada Núm. 97.

aplicarán de manera supletoria "en todo aquello que no fuere incompatible ni esté en conflicto" con dicho estatuto.

SEGUNDO ERROR: El Tribunal de Primera Instancia erró al mantener vigente el entredicho provisional, y la paralizació n total que éste impone, por un periodo que excede radicalmente el diseñ o y los límites temporales del ordenamiento aplicable, ya sea que se trate (a) de un entredicho/injunction bajo la Regla 57, o (b) de un injunction estatutario bajo el Artículo 14.1 de la Ley 161-2009.

TERCER ERROR: El Tribunal de Primera Instancia erró al omitir la imposició n de una fianza conforme establece la regla, requisito para la concesión y/o mantenimiento del remedio interdictal preliminar, en contravención directa con el texto expreso de la Regla 57.4 de Procedimiento Civil y con la jurisprudencia que reconoce que la fianza no es un accesorio discrecional, sino un requisito indispensable del *injunction* preliminar.

CUARTO ERROR: El Tribunal de Primera Instancia erró al permitir y sostener la paralización de una obra amparada por un permiso final bajo un esquema que, en la práctica, descansa en "meras alegaciones", sin celebrar una vista evidenciaria efectiva que atienda, de forma expresa y con el rigor debido, la presunción legal de corrección y legalidad que la Ley 161 reconoce a favor de los permisos expedidos.

QUINTO ERROR: El Tribunal de Primera Instancia erró al desnaturalizar el carácter sumario, independiente y limitado del *injunction* estatutario provisto en el Art. 14.1 de la Ley 161-2009, sustituyendo el trámite y los términos mandatorios del mecanismo legislativo por un curso procesal dilatado que priva de sentido (y de eficacia) el remedio que el legislador diseñó para atender controversias de premisos con urgencia.

Como mencionamos, ese día también presentó una solicitud de auxilio de jurisdicción, que fue declarada No Ha Lugar mediante *Resolución* del 12 de enero del año en curso. El 18 de enero de 2026, Metropistas sometió su posición. Mientras, el 4 de febrero de 2026, BMedia sometió *Moción Informativa Urgente en Solicitud de Orden* en la que nos pide que paralicemos los procedimientos, porque el foro primario continúa tramitando el pleito e inclusive, ha autorizado actuaciones procesales. Luego, el 6 del mismo mes y año, Metropistas se opuso. En cuanto a este último asunto, resolvemos **No Ha Lugar** a la nueva solicitud de paralización sometida por B Media. Así resuelto, damos por sometido el asunto y procedemos a resolver.

## II.

### -A-

El vehículo procesal de *certiorari* permite a un tribunal de mayor jerarquía a revisar discrecionalmente las órdenes o resoluciones interlocutorias emitidas por una corte de inferior instancia judicial. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 195 (2023) al citar a *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021) y otros. La característica distintiva del recurso de *certiorari* descansa en la discreción encomendada a este Tribunal de Apelaciones para autorizar su expedición y adjudicar sus méritos. *Íd*. De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *BPPR v. SLG Gómez-López*, 213 DPR 314 (2023) y casos allí citados. Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho." *Íd*.

Ahora bien, en los procesos civiles, los preceptos que regulan la expedición de un auto de *certiorari* se encuentran en la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1. *Rivera et al. v. Arcos Dorados et al.*, *supra,* a la pág. 207-208. La mencionada Regla dispone que solo se expedirá un recurso de *certiorari* cuando "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo." Asimismo, y a manera de excepción, se podrá expedir este auto discrecional cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, en asuntos relacionados a privilegios evidenciarios, en casos de anotaciones de rebeldía, en casos de relaciones de familia, en casos revestidos de interés público o en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia." *Íd*.

De otro lado, el examen de estos autos discrecionales no se da en el vacío o en ausencia de otros parámetros. *800 Ponce de León v. AIG*, 205 DPR 163 (2020).  Para ello, la Regla 40 de nuestro Reglamento establece ciertos indicadores a tomar en consideración al evaluar si se debe o no expedir un recurso de *certiorari*.[8]

Los criterios previamente transcritos pautan el ejercicio sabio y prudente de la facultad discrecional judicial. *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 712 (2019).

*-B-*

La Ley para la Reforma del Proceso de Permisos de Puerto Rico, Ley Núm. 161-2009, *supra*, se aprobó con el propósito de reformar y transformar el sistema de obtención de permisos.[9] Dicho estatuto, es la disposición legal que establece el marco jurídico y administrativo que rige la solicitud, evaluación, concesión y denegación de permisos.[10]

En lo pertinente, la Ley Núm. 161-2009 permite a una parte que tenga un interés propietario o personal que pueda verse afectado a presentar una solicitud de recursos extraordinarios ante el Tribunal de Primera Instancia con el fin de solicitar la revocación de un permiso, la paralización o demolición de una obra, entre otros remedios. Específicamente, su Art. 14.1 lee como a continuación transcribimos:

> La Junta de Planificación, un Municipio Autónomo con Jerarquía de la I a la III, una Entidad Gubernamental Concernida que haya determinado que sus leyes y reglamentos han sido violados, o cualquier persona privada, natural o jurídica, que tenga un interés propietario o personal que podría verse adversamente afectado, **podrá presentar una acción de *injunction*, *mandamus*, sentencia**

---

[8] Así pues, según la citada regla, estos indicadores son: si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho; si la situación de hechos planteada es la más indicada para el análisis del problema; si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia; si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados; si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración; si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio; o si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.  4 LPRA Ap. XXII-B, R. 40.

[9] *Díaz Vázquez, et al. v. Colón Peña, et al.*, 214 DPR 1135, 1143 (2024).

[10] *Id.*, al citar a *Laureano v. Mun. de Bayamón*, 197 DPR 420, 433 (2017).

**declaratoria, o cualquier otra acción adecuada** para solicitar: 1) la revocación de una determinación final otorgada, cuya solicitud se haya hecho utilizando información incorrecta o falsa; 2) la paralización de una obra iniciada sin contar con las autorizaciones y permisos correspondientes, o incumpliendo con las disposiciones y condiciones del permiso otorgado; 3) la paralización de un uso no autorizado O de una construcción autorizada mediante permiso, para la cual no se hayan realizado los pagos correspondientes a aranceles, pólizas, arbitrios y sellos; 4) la demolición de obras construidas, que al momento de la presentación del recurso y al momento de adjudicar el mismo no cuenten con permiso de construcción, ya sea porque nunca se obtuvo o porque el mismo ha sido revocado.

En los casos en los que se solicite la revocación de una determinación final, será parte indispensable de en el pleito la entidad o profesional autorizado que haya emitido la determinación final y el dueño del proyecto. Además, en los casos en los que se solicite la revocación de un permiso otorgado por haberse utilizado información incorrecta o falsa y que dicho permiso se haya expedido bajo las disposiciones de la Ley Núm. 135 de 15 de junio de 1967, según enmendada, dicho ingeniero o arquitecto también será parte indispensable ponle en el pleito.

Indistintamente de haberse presentado una querella administrativa ante la Junta de Planificación, Entidad Gubernamental Concernida, Municipio Autónomo con Jerarquía de la I a la V [sic] o cualquier otra dependencia o instrumentalidad del Gobierno de Puerto Rico, alegando los mismos hechos, una parte adversamente afectada podrá presentar un recurso extraordinario en el Tribunal de Primera Instancia. Una vez habiéndose presentado el recurso extraordinario al amparo del presente Artículo, la agencia administrativa perderá jurisdicción automáticamente sobre la querella y cualquier actuación que llevare a cabo con respecto a la misma será considerada *ultra vires.*

**El Tribunal de Primera Instancia deberá celebrar vista dentro de un término no mayor de diez (10) días naturales desde la presentación del recurso y deberá dictar sentencia en un término no mayor de veinte (20) días naturales desde la celebración de la vista.**

En aquellos casos en los cuales se solicite la paralización de una obra o uso, de ser la misma ordenada por el Tribunal, se circunscribirá única y exclusivamente a aquellos permisos, obras o uso impugnado, mas no a ningún otro que se lleve a cabo en la propiedad y que cuente con un permiso o autorización debidamente expedida.

El Tribunal impondrá honorarios de abogados contra la parte que presenta el recurso bajo este Artículo si su petición resulta carente de mérito y razonabilidad o se presenta con el fin de paralizar una obra o permiso sin fundamento en ley. Los honorarios de abogados bajo este Artículo será una suma igual a los honorarios que las otras partes asumieron para oponerse a la petición judicial. En el caso que el Tribunal entienda que no es aplicable la presente imposición de honorarios de abogados, tendrá que así explicarlo en su dictamen con los fundamentos para ello. Las revisiones de los dictámenes bajo este Artículo ante el Tribunal de Apelaciones se remitirán a los paneles especializados creados mediante esta Ley y dicho foro tendrá 60 días para resolver el recurso de revisión desde la presentación del mismo.

El Art. 14.1 de la Ley Núm. 161-2009 *supra*, instituyó un procedimiento especial reconocido en nuestro ordenamiento jurídico bajo el concepto *injunction* estatutario. Este recurso se caracteriza por ser "un mecanismo estatutario, independiente, sumario y limitado", y cuyo propósito fundamental es "hacer viable la efectividad de las leyes y los reglamentos de planificación". *Díaz Vázquez, et al. v. Colón Peña, et al.*, *supra*, a la pág. 1146 y casos allí citados. El *injunction* estatutario al amparo del mencionado artículo, no se rige por los requisitos rigurosos que aplican al *injunction* tradicional en virtud de la Regla 57 de Procedimiento Civil, *supra*. A este, tampoco pueden oponérsele las defensas tradicionales de la equidad. *Id.*, págs. 1147-1148. Al ser de carácter estatutario y no surgir de la equidad— procede cuando se demuestre que la obra o el uso no cuenta con las autorizaciones y los permisos correspondientes o que se realizó en contravención a lo dispuesto en el permiso concedido. Aunque este procedimiento especial provee para un remedio estatutario que tiene cierta afinidad con un *injunction* preliminar, no le aplica el mismo rigor de ese recurso ni tampoco tiene la finalidad de un *injunction* permanente. *Id.*

### III.

Según arriba mencionamos, la peticionaria le imputa al foro primario la comisión de cuatro (4) errores. Al discutir el primero de éstos, expone que, dado que el Art. 14.1 de la Ley 161-2009 provee el marco procesal del *injunction* estatutario, el foro primario no puede sustituir dicha herramienta y sostener la paralización de la obra ordenada al amparo del *injunction* provisional de la Regla 57 de Procedimiento Civil. Niega que esta última pueda complementar las disposiciones del citado artículo, pues en este se establece un trámite acelerado que ordena la celebración de una audiencia en un plazo no mayor de diez (10) días, dictándose sentencia dentro de los siguientes veinte (20) días de la vista. Según B Media, ello delimita la naturaleza del remedio y cómo puede tramitarse el mismo.

Así pues, y al citar el caso de *Díaz Vázquez, et al. v. Colón Peña, et al.*, argumenta que si bien las órdenes de paralización emitidas bajo el Art. 14.1 tienen cierta afinidad con los *injunctions* preliminares, son un remedio estatutario e independiente del *injunction* tradicional, rigiéndose por requisitos y criterios distintos. Conforme discute, si lo que está concediéndose y manteniéndose opera como *injunction* preliminar, entonces el tribunal no puede al palio de la Regla 53 de Procedimiento Civil, utilizar la Regla 57 de Procedimiento Civil para sustituir la estructura en tiempo y espacio mandatorio del Art. 14.1.

De otra parte, y en apoyo a la improcedencia procesal que le imputa al foro primario, argumenta al discutir su segundo error señalado que el propio trámite procesal acaecido en el caso demuestra la incompatibilidad de las disposiciones legales aplicadas, pues ha transcurrido tiempo en exceso al mandatado por el Artículo 14.1 para que se celebre la vista de *injunction* y se dicte sentencia. A su vez, en su tercer error, impugna la falta de imposición de una fianza razonable, pues conforme nuestro ordenamiento jurídico, la fianza que se imponga debe guardar una correlación clara con los daños que puedan sufrirse.[11] Por último, en su cuarto error impugna que se haya ordenado la paralización de la obra sin previamente celebrarse la correspondiente audiencia, mientras que, en el quinto de éstos, reitera el carácter sumario del interdicto estatutario bajo el Art. 14.1, otra vez atribuye error al tribunal al sustituir sus términos

---

[11] Nos parece que mediante los argumentos que la peticionaria levanta en su tercer señalamiento de error, directamente ataca la emisión del interdicto preliminar bajo la Regla 57 de Procedimiento Civil decretada en el caso por haberse incumplido un requisito para su concesión. Notamos sin embargo que, habiéndose emitido el mismo, la peticionaria no acudió dentro del término establecido en ley en revisión judicial del interdicto bajo los planteamientos que ante nos ahora presenta. Ello, a pesar de que, desde al menos desde el 31 de octubre de 2025, cuando acudió por primera vez ante el TPI, conocía de la expedición del *injunction* preliminar y que desde ese momento tenía a su disposición todos los argumentos que presenta ante nos. En contrario, no es hasta ahora, tiempo después que al recurrir de otra decisión interlocutoria aprovecha para cuestionar la validez del interdicto preliminar emitido en el caso. Siendo ello así, no atenderemos el tercer señalamiento de error de la peticionaria, al considerar que su pedido es uno tardío.

mandatorios por aquellos de la Regla 57 de Procedimiento Civil, supra y repite su reclamo de incompatibilidad de ambos recursos.

Metropistas, por su parte, al comparecer a defender la decisión recurrida, primero señala que en el caso no se satisfacen los criterios que rigen la expedición del auto de *certiorari* y el mismo tampoco presenta una circunstancia que justifique nuestra intervención. Además, afirma y discute que la resolución dictada no es contraria a derecho, pues en ella el foro primario se limitó a expedir un interdicto preliminar bajo la Regla 57 para preservar el *status* quo y entonces proceder a la adjudicación en los méritos de la controversia bajo el Artículo 14.1 de la Ley 161-2009. Es más, apunta que la prolongación del entredicho provisional ha respondido a las propias gestiones de B Media y no, como apunta la peticionaria, a inacción por parte del foro primario.

Hemos estudiado el legajo apelativo y tomado conocimiento de las incidencias procesales acaecidas ante el TPI. También hemos repasado la jurisprudencia particular citada por la parte peticionaria, así como las expresiones emitidas por el foro primario en el dictamen recurrido. Ahora bien, en consideración a las circunstancias particulares del presente caso, **particularmente de su trámite ante el tribunal de instancia**, [12] estimamos que la decisión recurrida debe ser sostenida.[13] Veamos.

Al final del dictamen recurrido, al responder la moción de la peticionaria y aclarar cómo atendería la controversia, el tribunal dispuso que el interdicto estatutario se atendería en sus méritos bajo el Artículo 14.1

---

[12] Como arriba relatamos, el 27 de octubre de 2025, Metropistas acudió ante el foro primario al amparo tanto de la Regla 57 de Procedimiento Civil, supra, como de las disposiciones del Art. 14.0 de la Ley 161-2009. Según dijimos, al día siguiente el foro primario emitió un interdicto preliminar en el que ordenó la paralización de la obra solicitada en la *Demanda Jurada.* En ese momento, el tribunal explicó que su decisión respondía a la naturaleza extraordinaria de la situación presentada; señalándose audiencia para el 3 de noviembre de 2025, o sea, para seis (6) días más tarde. La vista señalada fue programada en varias ocasiones para fechas posteriores. Ello ante los distintos reclamos levantados por las partes demandadas sobre el procedimiento a seguirse y las respectivas mociones de desestimación por estas presentadas.

[13] Por estimar que están relacionados los unos con los otros, al explicar nuestra decisión, atenderemos de forma conjunta el primer, segundo, cuarto y quinto señalamiento de error.

de la Ley 161-2009, el que provee los remedios **permanentes** para revocar permisos viciados, detener el desarrollo de obras ilegales y ordenar la demóción de estructuras construidas en violación a la ley. O sea, según el propio foro primario informó, se propone atender el asunto y emitir su determinación bajo el Art. 14.1 de la Ley 161-2009, a través del cual, de proceder, podría ordenarse la destrucción de la obra hasta ese momento edificada. No encontramos que esta determinación, sea contraria a derecho.

Arribamos a esta conclusión tras considerar que, al día siguiente de haberse sometido la *Demanda Jurada*, el foro primario emitió un interdicto preliminar en el que ordenó la paralización de la obra allí solicitada en la *Demanda Jurada* y señaló audiencia para el 3 de noviembre de 2025.[14] O sea, para seis (6) días más tarde; fecha que estaba dentro del plazo que tenía para poder celebrar la audiencia bajo el Art. 14.1. Conforme arroja el expediente judicial, y según arriba establecimos, antes de esa fecha B Media acudió por escrito y solicitó la desestimación del pleito, entre otras razones, porque la causa de acción acumulaba remedios y pretensiones legalmente incompatibles. Asimismo, advertimos que, llegado el día de la vista pautada, y debido a los reclamos allí levantados por las demandadas, el foro primario no celebró la audiencia, cambiándola para los días 13 y 14 de noviembre de 2025.

También, tomamos nota de que el 7 de noviembre de 2025, declaró No Ha Lugar la solicitud de desestimación de B Media[15], así como del hecho de que la audiencia del caso fue reseñalada en dos ocasiones adicionales.[16]

---

[14] En ese momento, según el tribunal explicó, tal decisión respondía a la naturaleza extraordinaria de la situación presentada.

[15] Reiteramos que B Media no acudió en revisión judicial del interdicto preliminar que ordenó la paralización de la obra. Es más, tampoco acudió en revisión judicial de la denegatoria de su moción dispositiva. Por el contrario, en su *Moción Solicitando Determinación del Marco Procesal Aplicable al Injunction Emitido y Otros Asuntos* levantó, hasta cierto punto, similares argumentos a los ya levantados en su moción dispositiva del 31 de octubre de 2025.

[16] La primera vez, por acuerdo de las partes fue calendarizada para los días 20 y 21 de noviembre de 2025, dejándose esos días sin efecto ante varios cuestionamientos allí levantados.

La primera vez, por acuerdo de las partes fue calendarizada para los días 20 y 21 de noviembre de 2025. Es entonces que, ante varios cuestionamientos allí levantados, se dejó otra vez sin efecto por el tribunal para una fecha ulterior.

Este resumido tracto nos permite apreciar que desde los comienzos del pleito el TPI ha atendido diligentemente el recurso instado procurando que el caso sea atendido de forma rápida. Tan así, que citó el caso para una fecha cercana con el fin de atenderle. Aunque reconocemos que conforme el lenguaje de Art. 14 de la Ley 161-2009, los tribunales deben celebrar la audiencia dentro de los diez días siguientes a la presentación del recurso, no podemos obviar que en el trámite acaecido ante el foro primario las propias demandadas solicitaron la recalendarización de la audiencia a celebrarse. Ignorar este detalle, sería apoyar que, amparándose en argumentos dirigidos a obtener la desestimación de un recurso, se logre extender los procedimientos más allá del plazo que la ley dispone y luego se utilice la dilación como argumento para atacar el procedimiento. Más aun, si habiéndose emitido un *interdicto* preliminar que ordena la paralización de una obra, en ese momento no acudieron en revisión judicial para impugnar dicha determinación, sino que, aprovechando otras coyunturas, procedan tiempo después a hacerlo.

La realidad es que en la resolución recurrida el foro primario determinó que el caso sería atendido al amparo del interdicto estatutario provisto por el Art. 14.1 de la Ley 161-2009. Según las propias aseveraciones de la peticionaria, es este el instrumento correcto para que se atienda la controversia. Por consiguiente, toda vez que según se resolvió, el asunto será atendido bajo la disposición legal correcta, nos parece que la decisión recurrida debe confirmarse, permitiéndosele al TPI atender y disponer del asunto al amparo de la mencionada disposición legal.

**-IV-**

Por todo lo antes consignado, declaramos **No Ha Lugar** a la solicitud de paralización sometida por B Media el 4 de febrero de 2026. Asimismo, y según adelantamos, expedimos el auto de *certiorari* y confirmamos el dictamen recurrido.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones